J-S39002-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.R.F.H-H., A MINOR | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF:  D.H., FATHER | : | No. 513 EDA 2019 |

Appeal from the Order Entered January 23, 2019
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-AP-0001097-2017

| | | |
|---|---|---|
| IN THE INTEREST OF: A.H., A MINOR | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: D.H., FATHER | : | No. 514 EDA 2019 |

Appeal from the Order Entered January 23, 2019
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-DP-0002642-2016

BEFORE:   GANTMAN, P.J.E., STABILE, J., and STEVENS*, P.J.E.

MEMORANDUM BY GANTMAN, P.J.E.:          **FILED SEPTEMBER 09, 2019**

Appellant, D.H. ("Father"), purports to appeal from the orders entered in the Philadelphia County Court of Common Pleas, reinstating the trial court's prior decree terminating Father's parental rights to his minor child, A.R.F.H-H.[1] ("Child"), and changing the goal to adoption.  We affirm.

In its opinion, the trial court sets forth most of the relevant facts and procedural history of this case.  Therefore, we have no need to restate them. We add Father and R.B.H. ("Mother") are the natural parents of Child.  On

_____

[1] The record lists Child's initials alternatively as both A.R.F.H-H and A.H.; both sets of initials refer to the same Child.

_____

*   Former Justice specially assigned to the Superior Court.

December 7, 2016, the court adjudicated Child dependent. The Philadelphia Department of Human Services ("DHS") filed on November 8, 2017, petitions to terminate parents' parental rights to Child and to change Child's permanency goal to adoption. Following a hearing on December 15, 2017, the court terminated Father's parental rights to Child and changed Child's permanency goal to adoption.[2]

On January 10, 2018, Father timely appealed and filed a contemporaneous concise statement of errors complained of on appeal per Pa.R.A.P. 1925(a)(2)(i). In his notice of appeal, Father purported to appeal from the termination of his parental rights and the goal change to adoption. In his concise statement and on appeal, however, Father raised issues challenging only the termination of his parental rights to Child.

On October 1, 2018, this Court vacated the December 15, 2017 decree terminating Father's parental rights and remanded for the trial court to appoint legal counsel for Child to determine and develop the record on Child's preferred outcome. *See Interest of A.R.F.H-H.*, 200 A.3d 524 (Pa.Super. 2018) (unpublished memorandum).

Upon remand, the trial court appointed legal counsel for Child on December 3, 2018. On January 23, 2019, the court conducted a hearing,

---

[2] Following a separate hearing, the trial court terminated Mother's parental rights to Child on February 14, 2018. This Court affirmed on July 24, 2018. *See In Interest of A.H.*, 194 A.3d 706 (Pa.Super. 2018) (unpublished memorandum). Mother is not a party to the current appeal.

where Child's legal counsel assured the court that no conflict existed between Child's best interests and legal interests. Counsel explained Child is bonded with her maternal grandfather, Child's pre-adoptive parent, and wants her maternal grandfather to adopt her. By order of January 23, 2019, the court reinstated the December 15, 2017 decree terminating Father's parental rights. Father filed on February 18, 2019, a timely notice of appeal and contemporaneous Rule 1925 statement at both the termination and the goal change docket numbers. This Court consolidated Father's appeals *sua sponte* on March 8, 2019.

Father raises the following issues for our review:

> WHETHER THE TRIAL COURT ERRED BY TERMINATING THE PARENTAL RIGHTS OF [FATHER] UNDER 23 PA.C.S.A. § 2511(A)(1)?
>
> WHETHER THE TRIAL COURT ERRED BY TERMINATING THE PARENTAL RIGHTS OF [FATHER] UNDER 23 PA.C.S.A. § 2511(A)(2)?
>
> WHETHER THE TRIAL COURT ERRED BY TERMINATING THE PARENTAL RIGHTS OF [FATHER] UNDER 23 PA.C.S.A. § 2511(A)(5)?
>
> WHETHER THE TRIAL COURT ERRED BY TERMINATING THE PARENTAL RIGHTS OF [FATHER] UNDER 23 PA.C.S.A. § 2511(A)(8)?
>
> WHETHER THE TRIAL COURT ERRED BY TERMINATING THE PARENTAL RIGHTS OF [FATHER] UNDER 23 PA.C.S.A. § 2511(B)?
>
> WHETHER THE TRIAL COURT ERRED BY DETERMINING IT TO BE IN…CHILD'S BEST INTEREST TO CHANGE THE GOAL FROM REUNIFICATION TO ADOPTION?

(Father's Brief at 5-6).

As a preliminary matter, "where a case is remanded to resolve a limited issue, only matters related to the issue on remand may be appealed." **Commonwealth v. Lawson**, 789 A.2d 252, 253 (Pa.Super. 2001). Any issue unrelated to the matter on remand, which was not previously raised in the trial court, is waived. **Commonwealth v. Jackson**, 765 A.2d 389, 395 (Pa.Super. 2000), *appeal denied*, 568 Pa. 628, 793 A.2d 905 (2002). **See also** Pa.R.A.P. 302(a) (explaining general rule that issues not raised before trial court are waived and cannot be raised for first time on appeal). Additionally, issues not raised in a Rule 1925 concise statement of errors will be deemed waived. **Lineberger v. Wyeth**, 894 A.2d 141 (Pa.Super. 2006). **See also In re L.M.**, 923 A.2d 505 (Pa.Super. 2007) (applying Rule 1925 waiver standards in family law context).

Instantly, Father purports to challenge in his sixth issue the December 15, 2017 change of Child's permanency goal to adoption. When Father originally appealed from the December 15th decree, however, Father raised in his concise statement and on appeal issues pertaining only to the termination of his parental rights to Child. Thus, Father waived any challenge to the goal change determination. **See Lineberger, supra**; Pa.R.A.P. 302(a). Further, in its October 1, 2018 disposition, this Court vacated the December 15th decree only insofar as it terminated Father's parental rights; this Court left undisturbed the goal change determination. Further, this Court remanded

strictly for the purpose of assessing and developing the record on Child's preferred outcome, as it pertained to the termination of Father's parental rights. Therefore, Father can challenge in the current appeal only the termination of his parental rights to Child. *See Lawson, supra*. Accordingly, we give Father's sixth issue no further attention.

Regarding Father's remaining issues one through five, appellate review in termination of parental rights cases implicates the following principles:

> In cases involving termination of parental rights: "our standard of review is limited to determining whether the order of the trial court is supported by competent evidence, and whether the trial court gave adequate consideration to the effect of such a decree on the welfare of the child."

*In re Z.P.*, 994 A.2d 1108, 1115 (Pa.Super. 2010) (quoting *In re I.J.*, 972 A.2d 5, 8 (Pa.Super. 2009)).

> Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. … We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.
>
> *In re B.L.W.*, 843 A.2d 380, 383 (Pa.Super. 2004) (*en banc*), *appeal denied*, 581 Pa. 668, 863 A.2d 1141 (2004) (internal citations omitted).
>
> Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by the finder of fact. The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.
>
> *In re Adoption of A.C.H.*, 803 A.2d 224, 228 (Pa.Super.

2002) (internal citations and quotation marks omitted). The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. *In re J.D.W.M.*, 810 A.2d 688, 690 (Pa.Super. 2002). We may uphold a termination decision if any proper basis exists for the result reached. *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*). If the court's findings are supported by competent evidence, we must affirm the court's decision, even if the record could support an opposite result. *In re R.L.T.M.*, 860 A.2d 190, 191-92 (Pa.Super. 2004).

*In re Z.P., supra* at 1115-16 (quoting *In re Adoption of K.J.*, 936 A.2d 1128, 1131-32 (Pa.Super. 2007), *appeal denied*, 597 Pa. 718, 951 A.2d 1165 (2008)).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Joseph Fernandes, we conclude Father's remaining issues merit no relief. The trial court opinion comprehensively discusses and properly disposes of Father's issues one through five. (*See* Trial Court Opinion, filed May 10, 2019, at 5-16) (finding: **(1-5)** Father was aware of his Single Case Plan ("SCP") objectives six months before DHS filed petition to terminate his parental rights to Child; Father showed settled purpose to relinquish his parental claim to Child by failing to accomplish any of his SCP objectives; for example, Father failed to complete treatment for drug and alcohol, perform drug screens, obtain appropriate housing, attend weekly visits with Child, complete parenting and domestic violence programming, comply with stay-away order

and protection from abuse ("PFA") order as to maternal grandfather, and sign consent and release forms for Child; Child has been in system since November 28, 2016, thirteen months prior to termination hearing in December 2017 and twenty-six months prior to termination hearing in January 2019; Father has been unable to place himself in position to parent Child for life of case, and conditions which led to removal of Child continue to exist after twenty-six months; Child would not suffer irreparable harm if Father's parental rights were terminated; Child has strong bond with maternal grandfather, to whom she looks to meet her daily needs and as her caregiver; Child has stability in maternal grandfather's home; termination of Father's parental rights is in best interest of Child's physical, intellectual, moral, and spiritual well-being). The record supports the trial court's rationale. ***See In re Z.P., supra***. Accordingly, we affirm based on the trial court opinion.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/9/19

**IN THE COURT OF COMMON PLEAS**
**FOR THE COUNTY OF PHILADELPHIA**
**FAMILY COURT DIVISION**

| | | |
|---|---|---|
| In the Interest of A.R.F.-H., a Minor | : | CP-51-DP-0002642-2016 |
| a/k/a A.H., a Minor | : | CP-51-AP-0001097-2017 |
| | : | |
| | : | FID: 51-FN-002518-2016 |
| | : | |
| APPEAL OF: D.H., Father | : | 513 EDA 2019 |
| | : | 514 EDA 2019 |

## OPINION[1]

**Fernandes, J.:**

Appellant D.H. ("Father") appeals from the order entered on January 23, 2019, reinstating the termination decree of December 15, 2017, to involuntarily terminate Father's parental rights to A.R.F.-H. ("Child") pursuant to the Adoption Act, 23 Pa.C.S.A. §2511(a)(1), (2), (5), and (b). Andre Martino, Esquire, counsel for Father, ("Father's Counsel") filed a timely Notice of Appeal with a Statement of Matters Complained of on Appeal pursuant to Rule 1925(b).

**Factual and Procedural Background:**

DHS originally became involved with this family on November 16, 2016, when DHS received a General Protective Services ("GPS") report that alleged Child, Mother[2], and Father were squatting in a vacant home; the home had a strong odor of marijuana; Father sold drugs in Child's presence; Father left Child in the care of Maternal Grandfather ("MGF") and never returned; while Child was in MGF's care, Father called and stated that he was in Miami; Father called again on another occasion and stated that he was in New York; police were called because Mother and Father returned and tried to remove Child from MGF's care; Father threatened to blow up MGF's home, blow up MGF's vehicle, and assault MGF in front of the police; there is a history of domestic violence between Mother and Father. This report was determined to be valid.

On November 17, 2016, DHS attempted to visit MGF's home, but there was no answer. DHS left

---

[1] The trial court requested the Notes of Testimony for January 23, 2019, on February 19, 2019. The trial court received the Notes of Testimony on March 25, 2019.

[2] Mother is not involved with this appeal.

a notification letter. On November 18, 2016, MGF contacted DHS and stated that Child had been in his care since August 2016. He also indicated that he planned to obtain a Protection from Abuse ("PFA") Order against Mother and Father because they came into the home on November 12, 2016, and tried to remove Child from the home. MGF alleged that during the incident, Father threatened to harm him, there was a physical altercation, and the police were called. On that same day, DHS attempted to call Father, but the phone was disconnected. DHS has received allegations that Father had previously had no contact with Child and that he lacks stable, appropriate housing. On November 28, 2016, DHS met with MGF, who indicated that on November 23, 2016, Mother and Father had attempted to remove Child from daycare, but she was not in school due to illness. DHS also determined that MGF's home was appropriate. On that same day, DHS obtained an Order of Protective Custody ("OPC") and Child remained in MGF's care. On November 29, 2016, DHS spoke with Father, who admitted using marijuana with Mother. Father indicated that he and Mother left Child in MGF's care in August 2016 due to their out-of-state employment and asked MGF to care for Child for a couple of months.

On November 30, 2016, a shelter care hearing was held for Child. The trial court lifted the OPC, ordered Child's temporary commitment to DHS to stand, referred Father to the Clinical Evaluation Unit ("CEU") for a forthwith full drug and alcohol screen with a dual diagnosis assessment and issued and stay-away order against Father as to MGF and his home.[3] On December 7, 2016, the trial court adjudicated Child dependent based on present inability to provide proper parental care and control. The trial court discharged the temporary commitment to DHS and fully committed Child. Father was referred to the CEU for a forthwith drug screen, dual diagnosis assessment, monitoring, and three random drug screens. Father was also referred for domestic violence counseling, housing assistance, and parenting education at the Achieving Reunification Center ("ARC"). The stay-away order as to Father was ordered to stand and Father was ordered not to have any contact with Child's daycare. Father was ordered to comply with all recommendations and attend weekly supervised, line-of-sight visitation with Child at the agency.

On December 19, 2016, Community Umbrella Agency ("CUA") Wordsworth held an initial Single Case Plan ("SCP") meeting. Child's goal was identified as "return to parent." Father's parental

---

[3] Between November 30, 2016, and February 14, 2018, the trial judge assigned to this matter was the Honorable Lyris Younge. From December 3, 2018 to the present, this matter is assigned to the Honorable Joseph Fernandes.

objectives were to improve his relationship with Child; attend weekly supervised line-of-sight visits with Child; correct and/or stabilize health and sign all necessary consent forms; comply with all court orders, service plans, and recommendations; comply with the stay-away order as to MGF and Child's daycare; attend the ARC for parenting and housing; contact Menergy for domestic violence counseling; achieve and maintain recovery for drug and alcohol issues; attend the CEU for an assessment and follow the treatment recommendations; complete three random drug screens prior to the next court date; and sign all necessary consent forms for Child.

On March 7, 2017, a permanency review hearing was held for Child. Father was present for this hearing. It was determined that the CEU completed a progress report that indicated that Father failed to visit the CEU for the forthwith screen on December 7, 2016, and that Father failed to attend his scheduled assessment on December 14, 2016. Father also failed to contact the case manager to reschedule the assessment. Additionally, Father tested positive for marijuana on January 18, 2017. The trial court determined that Child's placement continued to be necessary and appropriate. Father was re-referred to the CEU for a forthwith drug screen, a dual diagnosis assessment, and three random drug screens prior to the next court date. Father was ordered to continue weekly supervised, line-of-sight visitation with Child.

On June 16, 2017, CUA revised the SCP. Child's goal remained as "return to parent." Father's parental objectives remained predominantly the same, with the additional objective of providing CUA with proof of employment. Father was invited to participate in the development of this plan by written communication on May 15, 2017, but Father failed to attend the SCP meeting.

On August 11, 2017, a permanency review hearing was held for Child.[4] Father was present for this hearing. The trial court determined that between March 31, 2017, and August 18, 2017, Father failed to attend five scheduled visits with Child and was late on 10 different occasions to the scheduled visits. Additionally, on July 28, 2017, Father arrived an hour and forty-five minutes late for the scheduled two-hour visit with Child. During this visit, an altercation occurred between Mother, Father, and MGF, which resulted in police being dispatched to the scene. The CUA case manager reported that Father and Mother attacked MGF at the conclusion of the visit with Child,

---

[4] On May 23, 2017, and August 1, 2017, permanency review hearings were scheduled for Child, but the matters were granted a continuance due to the unavailability of counsel.

who was present at the time of the altercation but was not injured. Additionally, the CEU completed a progress report that indicated that Father presented to the CEU on June 21, 2017, and scheduled an appointment to complete the assessment on July 11, 2017. Father failed to call or attend the scheduled assessment and Father failed to submit any drug screens since the previous permanency hearing. The trial court determined that Child's placement continued to be appropriate and necessary. Father was referred to the CEU for a forthwith drug screen, assessment, and three random drug screens. The trial court ordered that Father's supervised visitation with Child was to be reinstated, but the visits were to be suspended if Father appeared to be under the influence of any substances.

On September 15, 2017, a permanency review hearing was held for Child. Father was not present for this hearing. The trial court referred Father to the CEU for a forthwith drug screen, a dual diagnosis assessment, monitoring, and three random drug screens, once he availed himself. The trial court also ordered that the stay-away order as to MGF and Child's daycare was to stand.

Child has been in DHS care since November 28, 2016. Father has failed to consistently comply with his objectives and comply with court orders throughout the life of the case. DHS filed a petition to involuntarily terminate Father's parental rights and change Child's permanency goal to adoption on November 8, 2017.

On December 15, 2017, the trial court held the termination and goal change trial for Child. Father was present for this trial. The trial court found clear and convincing evidence to change Child's permanency goal from reunification to adoption and to involuntarily terminate Father's parental rights pursuant to 23 Pa.C.S.A. §2511(a)(1), (2), (5), (8) and (b). On January 10, 2018, Father's Counsel, on behalf of Father, appealed the December 15, 2017, trial court order. On April 5, 2018, the Honorable Lyris Younge filed the trial court's opinion. On October 1, 2018, the Superior Court of Pennsylvania filed the Non-Precedential Decision, vacating the trial court's order to terminate Father's parenting rights without prejudice and remanded the matter for further proceedings regarding Child's legal interests. (148 EDA 2018).[5]

---

[5] The Superior Court of Pennsylvania did not vacate the trial court's order to change Child's permanency goal from reunification to adoption. (148 EDA 2018).

On December 3, 2018, a permanency review hearing was held for Child. The trial court appointed Susan Rubinovitz, Esquire, as the special child attorney ("Legal Counsel"). Legal Counsel was ordered to visit Child to ascertain Child's wishes and report back to the trial court.

On January 23, 2019, a permanency review hearing was held for Child. The trial court heard testimony from Legal Counsel regarding Child's wishes. The trial court reinstated the December 15, 2017, trial court order terminating Father's parental rights pursuant to 23 Pa.C.S.A. §2511(a)(1), (2), (5), (8) and (b). On February 18, 2019, Father's Counsel filed this appeal on behalf of Father.

**Discussion:**

On appeal[6], Father, by and through his attorney, indicate that the trial court's determinations as to:

1. Father's conduct under §2511(a)(1) was not supported by clear and convincing evidence.
2. Father's conduct under §2511(a)(2) was not supported by clear and convincing evidence.
3. Father's conduct under §2511(a)(5) was not supported by clear and convincing evidence.
4. Father's conduct under §2511(a)(8) was not supported by clear and convincing evidence.
5. Father's conduct under §2511(b) was not supported by clear and convincing evidence.
6. Being in the best interest to change the goal from reunification to adoption.

Father's Counsel appealed the change of the goal from reunification to adoption, the Superior Court of Pennsylvania did not vacate the trial court's order to change Child's permanency goal from reunification to adoption. Although the Superior Court of Pennsylvania did not reverse the trial court's decision to change Child's permanency goal, this opinion will still address the change of Child's permanency goal. For the purpose of this opinion, Father's issues 1 through 6 will be consolidated to read: Did the trial court err or abuse its discretion when it terminated Father's parental rights pursuant to 23 Pa.C.S.A. §2511(a)(1), (2), (5), (8), and (b), and changed the permanency goal to adoption? Father has appealed the involuntary termination of his parental rights and the goal change from reunification to adoption.

The grounds for involuntary termination of parental rights are enumerated in the Adoption Act at

---

[6] Father's Counsel filed two Notices of Appeal. However, the Statement of Errors Complained of on Appeal Pursuant to Pa.R.A.P. Rule 1925(b) included with each Notice of Appeal list the same errors.

23 Pa.C.S.A. §2511(a), which provides the following grounds for §2511(a)(1):

> **(a) General rule** - The rights of a parent, in regard to a child, may be terminated after a petition is filed on any of the following grounds:
>
> (1) The parent, by conduct continuing for a period of at least six months immediately preceding the filing of the petition, has either evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

In proceedings to involuntarily terminate parental rights the burden of proof is on the party seeking termination, which must establish the existence of grounds for termination by clear and convincing evidence. *In re Adoption of Atencio*, 650 A.2d 1064 (Pa. 1994). To satisfy Section (a)(1), the moving party must produce clear and convincing evidence of conduct sustained for at least six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. However, the six-month time period should not be applied mechanically; instead, the court must consider the whole history of the case. *In re B.N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004). A child needs love, protection, guidance, and support. Both physical and emotional needs cannot be met by a merely passive interest in the development of the child. The parental obligation is a positive duty, which requires affirmative performance. It requires continuing interest in the child and a genuine effort to maintain communication and association with the child. At the same time, the trial court shall not consider any efforts by the parent to remedy the conditions which brought the child into care which are first initiated subsequent to the giving notice of the filing of the termination petition. *Id*. The standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction without hesitance of the truth of precise facts in issue.

The petition for involuntary termination was filed for Child on November 8, 2017. Father's SCP objectives were drug and alcohol, parenting, housing, domestic violence, and visitation with Child. Additionally, Father was to sign appropriate consents, comply with the stay-away order regarding MGF, and maintain contact with CUA. (N.T. 12/15/17, pg. 14). For the six months prior to the filing of the petition, Father was aware of his objectives. (N.T. 12/15/17, pg. 13). Father failed to complete treatment for drug and alcohol. For the life of the case, Father has failed to engage in

treatment at any point. Father's drug of choice was marijuana. (N.T. 12/15/17, pgs. 22, 31). Father last visited the CEU on June 21, 2017, to schedule his assessment for July 11, 2017. On that day, Father was a no-show for his scheduled assessment and did not call to cancel or reschedule the assessment. Father has not had any contact with the CEU since June 21, 2017. Father admitted that he never attended an assessment at the CEU. Additionally, Father has not completed a drug screen with the CEU since January 18, 2017. (N.T. 12/15/17, pg. 41).DHS Exhibit 3). CUA indicated that Father did not completed his parenting objective at the ARC, but he completed parenting through Project Dad. (N.T. 12/15/17, pg. 31). When Father engaged in parenting at the ARC, Father failed to attend consistently. The ARC discharged Father for non-participation. (N.T. 12/15/17, pgs. 23-24; DHS Exhibit 7). Father has failed to complete his housing objective. Father has previously engaged in housing at the ARC, but Father failed to attend consistently. The ARC discharged Father for non-participation. (N.T. 12/15/17, pg. 24). Father does not have housing. (N.T. 12/15/17, pg. 31). Father has not completed his domestic violence objective and Father has never engaged in domestic violence counseling. (N.T. 12/15/17, pgs. 24, 31). Father has failed to consistently attend weekly supervised visitation with Child. (N.T. 12/15/17, pg. 15-16). Between September 2017 and December 2017, Father has missed four out of twelve weekly visits with Child. (N.T. 12/15/17, pg. 17). Father claimed that he missed these visits due to illness or job training. (N.T. 12/15/17, pg. 36). Although Father's behavior with Child has been appropriate during the supervised visits, Father was involved in an incident with MGF during the visit. On or around August 2017, Father and MGF engaged in an altercation in front of Child, resulting in police assistance. (N.T. 12/15/17, pg. 20). Father's visitation was subsequently suspended. On August 11, 2017, the trial court reinstated Father's supervised visitation. Father has never progressed beyond supervised visitation with Child. (N.T. 12/15/17, pgs. 21, 32-33; DHS Exhibit 2). Throughout the life of the case, Father has refused to sign consents and releases for Child. (N.T. 12/15/17, pg. 24). Father has refused to sign consents and releases on at least three different occasions and did not provide a reason as to why he refused to provide his signature. (N.T. 12/15/17, pg. 25). Father claimed that he refused to sign the consents and releases because he did not understand what he was signing. (N.T. 12/15/17, pgs. 34-35). Father has also failed to consistently comply with the stay-away order in regards to MGF. Father's incident at the supervised visit with Child was in violation of the trial court's stay-away order. (N.T. 12/15/17, pg. 25). Father has failed to consistently maintain contact with CUA throughout the life of the

case. On multiple occasions, CUA has struggled to make outreach to Father and Father would fail to follow up with CUA attempted to contact Father. (N.T. 12/15/17, pgs. 25-26). Father claimed that he did not receive calls or messages from CUA. (N.T. 12/15/17, pg. 40). Father has been non-compliant with his SCP objectives. (N.T. 12/15/17, pg. 27). Father has attended court hearings in this matter and participated in a SCP meeting on one occasion. (N.T. 12/15/17, pg. 9). Father was aware of his objectives, which have remained consistent. Father refuses to perform his parental duties by failing to accomplish any of his objectives. Father has not taken positive steps to put himself in a position to be reunified with Child. For the entire six-month period prior to the filing of the petitions, Father either failed or refused to successfully complete his objectives and place himself in a position to parent. As a result, the trial court did not err or abuse its discretion by finding clear and convincing evidence that Father, by his conduct, had refused and failed to perform parental duties and has evidenced a settled purpose to relinquish his parental claim to Child, so termination under 23 Pa.C.S.A. §2511(a)(1) was proper.

The trial court also terminated Father's parental rights under 23 Pa.C.S.A. §2511(a)(2). This section of the Adoption Act includes, as a ground for involuntary termination of parental rights, the repeated and continued incapacity, abuse, neglect or refusal of the parent that causes the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent. This ground is not limited to affirmative misconduct. It may include acts of refusal to perform parental duties, but focuses more specifically on the needs of the child. *Adoption of C.A.W.*, 683 A.2d 911, 914 (Pa. Super. 1996). §2511(a)(2) focuses on the child's present and future need for essential parental care, control, or subsistence necessary for their physical or mental well-being. *In re Adoption of M.J.H.*, 501 A.2d 648, 654 (Pa. Super. 1985). Even if a parent demonstrates love for their child, if a parent's incapacity cannot be remedied, their parental rights may be terminated. *Id*.

Throughout the time that Child has been in the custody of DHS, Father's SCP objectives were drug and alcohol, parenting, housing, domestic violence, and visitation with Child. Additionally, Father was to sign appropriate consents, comply with the stay-away order regarding MGF, and maintain contact with CUA. (N.T. 12/15/17, pg. 14). Father was aware of his objectives. (N.T. 12/15/17, pg. 13). Father failed to complete treatment for drug and alcohol. For the life of the case,

Father has failed to engage in treatment at any point. Father's drug of choice was marijuana. (N.T. 12/15/17, pgs. 22, 31). Father last visited the CEU on June 21, 2017, to schedule his assessment for July 11, 2017. On that day, Father was a no-show for his scheduled assessment and did not call to cancel or reschedule the assessment. Father has not had any contact with the CEU since June 21, 2017. Father admitted that he never attended an assessment at the CEU. Additionally, Father has not completed a drug screen with the CEU since January 18, 2017. (N.T. 12/15/17, pg. 41).DHS Exhibit 3). CUA indicated that Father did not completed his parenting objective at the ARC, but he completed parenting through Project Dad. (N.T. 12/15/17, pg. 31). When Father engaged in parenting at the ARC, Father failed to attend consistently. The ARC discharged Father for non-participation. (N.T. 12/15/17, pgs. 23-24; DHS Exhibit 7). Father has failed to complete his housing objective. Father has previously engaged in housing at the ARC, but Father failed to attend consistently. The ARC discharged Father for non-participation. (N.T. 12/15/17, pg. 24). Father does not have housing. (N.T. 12/15/17, pg. 31). Father has not completed his domestic violence objective and Father has never engaged in domestic violence counseling. (N.T. 12/15/17, pgs. 24, 31). Father has failed to consistently attend weekly supervised visitation with Child. (N.T. 12/15/17, pg. 15-16). Between September 2017 and December 2017, Father has missed four out of twelve weekly visits with Child. (N.T. 12/15/17, pg. 17). Father claimed that he missed these visits due to illness or job training. (N.T. 12/15/17, pg. 36). Although Father's behavior with Child has been appropriate during the supervised visits, Father was involved in an incident with MGF during the visit. On or around August 2017, Father and MGF engaged in an altercation in front of Child, resulting in police assistance. (N.T. 12/15/17, pg. 20). Father's visitation was subsequently suspended. On August 11, 2017, the trial court reinstated Father's supervised visitation. Father has never progressed beyond supervised visitation with Child. (N.T. 12/15/17, pgs. 21, 32-33; DHS Exhibit 2). Throughout the life of the case, Father has refused to sign consents and releases for Child. (N.T. 12/15/17, pg. 24). Father has refused to sign consents and releases on at least three different occasions and did not provide a reason as to why he refused to provide his signature. (N.T. 12/15/17, pg. 25). Father claimed that he refused to sign the consents and releases because he did not understand what he was signing. (N.T. 12/15/17, pgs. 34-35). Father has also failed to consistently comply with the stay-away order in regards to MGF. Father's incident at the supervised visit with Child was in violation of the trial court's stay-away order. (N.T. 12/15/17, pg. 25). Father has failed to consistently maintain contact with CUA throughout the life of the

case. On multiple occasions, CUA has struggled to make outreach to Father and Father would fail to follow up with CUA attempted to contact Father. (N.T. 12/15/17, pgs. 25-26). Father claimed that he did not receive calls or messages from CUA. (N.T. 12/15/17, pg. 40). Father has been non-compliant with his SCP objectives. (N.T. 12/15/17, pg. 27). Child needs permanency, which Father cannot provide. Father has demonstrated that he is unwilling to provide Child with essential parental care, control, or subsistence necessary for her physical and mental well-being. The conditions and causes of Father's incapacity cannot or will not be remedied by Father. Father has attended court hearings in this matter and has participated in a SCP meeting. (N.T. 12/15/17, pg. 9). Father is aware of his SCP objectives. Father had ample opportunity to put himself in a position to parent. Father's repeated and continued incapacity has not been mitigated. Termination under 23 Pa.C.S.A. §2511(a)(2) was also proper.

The trial court will now discuss the termination of Father's parental rights under 23 Pa.C.S.A. §2511(a)(5), which permits termination when a child was removed, by court or voluntary agreement, and placed with an agency if, for at least six months, the conditions which led to the placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services reasonably available to the parent are not likely to remedy the conditions leading to placement, and termination best serves the child's needs and welfare. DHS, as a child and youth agency, cannot be required to extend services beyond the period of time deemed as reasonable by the legislature or be subjected to herculean efforts. A child's life cannot be put on hold in hope that the parent will summon the ability to handle the responsibilities of parenting. *In re J.T.*, 817 A.2d 505 (Pa. Super. 2003). As a consequence, Pennsylvania's Superior Court has recognized that a child's needs and welfare require agencies to work toward termination of parental rights when a child has been placed in foster care beyond reasonable temporal limits and after reasonable efforts for reunification have been made by the agency, which have been ineffective. This process should be completed within eighteen months. *In re N.W.*, 859 A.2d 501 (Pa. Super. 2004).

Child has been in DHS custody since November 28, 2016, thirteen months at time of the termination trial on December 15, 2017 and twenty-six months at the time of the termination trial on January 23, 2019. Father's SCP objectives were drug and alcohol, parenting, housing, domestic violence, and visitation with Child. Additionally, Father was to sign appropriate consents, comply

with the stay-away order regarding MGF, and maintain contact with CUA. (N.T. 12/15/17, pg. 14). Father was aware of his objectives. (N.T. 12/15/17, pg. 13). Father failed to complete treatment for drug and alcohol. For the life of the case, Father has failed to engage in treatment at any point. Father's drug of choice was marijuana. (N.T. 12/15/17, pgs. 22, 31). Father last visited the CEU on June 21, 2017, to schedule his assessment for July 11, 2017. On that day, Father was a no-show for his scheduled assessment and did not call to cancel or reschedule the assessment. Father has not had any contact with the CEU since June 21, 2017. Father admitted that he never attended an assessment at the CEU. Additionally, Father has not completed a drug screen with the CEU since January 18, 2017. (N.T. 12/15/17, pg. 41).DHS Exhibit 3). CUA indicated that Father did not completed his parenting objective at the ARC, but he completed parenting through Project Dad. (N.T. 12/15/17, pg. 31). When Father engaged in parenting at the ARC, Father failed to attend consistently. The ARC discharged Father for non-participation. (N.T. 12/15/17, pgs. 23-24; DHS Exhibit 7). Father has failed to complete his housing objective. Father has previously engaged in housing at the ARC, but Father failed to attend consistently. The ARC discharged Father for non-participation. (N.T. 12/15/17, pg. 24). Father does not have housing. (N.T. 12/15/17, pg. 31). Father has not completed his domestic violence objective and Father has never engaged in domestic violence counseling. (N.T. 12/15/17, pgs. 24, 31). Father has failed to consistently attend weekly supervised visitation with Child. (N.T. 12/15/17, pg. 15-16). Between September 2017 and December 2017, Father has missed four out of twelve weekly visits with Child. (N.T. 12/15/17, pg. 17). Father claimed that he missed these visits due to illness or job training. (N.T. 12/15/17, pg. 36). Although Father's behavior with Child has been appropriate during the supervised visits, Father was involved in an incident with MGF during the visit. On or around August 2017, Father and MGF engaged in an altercation in front of Child, resulting in police assistance. (N.T. 12/15/17, pg. 20). Father's visitation was subsequently suspended. On August 11, 2017, the trial court reinstated Father's supervised visitation. Father has never progressed beyond supervised visitation with Child. (N.T. 12/15/17, pgs. 21, 32-33; DHS Exhibit 2). Throughout the life of the case, Father has refused to sign consents and releases for Child. (N.T. 12/15/17, pg. 24). Father has refused to sign consents and releases on at least three different occasions and did not provide a reason as to why he refused to provide his signature. (N.T. 12/15/17, pg. 25). Father claimed that he refused to sign the consents and releases because he did not understand what he was signing. (N.T. 12/15/17, pgs. 34-35). Father has also failed to consistently comply with the stay-away order in

regards to MGF. Father's incident at the supervised visit with Child was in violation of the trial court's stay-away order. (N.T. 12/15/17, pg. 25). Father has failed to consistently maintain contact with CUA throughout the life of the case. On multiple occasions, CUA has struggled to make outreach to Father and Father would fail to follow up with CUA attempted to contact Father. (N.T. 12/15/17, pgs. 25-26). Father claimed that he did not receive calls or messages from CUA. (N.T. 12/15/17, pg. 40). Father has been non-compliant with his SCP objectives. (N.T. 12/15/17, pg. 27). Child is currently placed with MGF, which is a pre-adoptive home. (N.T. 12/15/17, pgs. 28, 32). Child lives in the home with MGF, MGF's fiancée, and two MGF's two daughters that are two years older than Child. (N.T. 01/23/19, pg. 6). Child is doing well in the home. Child has a strong bond with MGF. Child looks to MGF to meet her day-to-day needs. Child looks to MGF as her caregiver. Child has stability in MGF's home. (N.T. 12/15/17, pgs. 28-29, 32; N.T. 01/23/19, pg. 6). Child needs permanency, which Father is unwilling to provide. As a result, the trial court found that termination of Father's parental rights was in the best interest of Child for her physical, intellectual, moral, and spiritual well-being. Termination best serves Child's needs and welfare. Because the trial court made these determinations on the basis of clear and convincing evidence, termination under 23 Pa.C.S.A. §2511(a)(5) was also proper.

The trial court also terminated Father's parental rights under 23 Pa.C.S.A. §2511(a)(8), which permits termination when:

> The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

This section does not require the court to evaluate a parent's willingness or ability to remedy the conditions which initially caused placement or the availability or efficacy of DHS services offered to the parent, only the present state of the conditions. *In re: Adoption of K.J.*, 936 A.2d 1128, 1133 (Pa. Super. 2007). The party seeking termination must also prove by clear and convincing evidence that the termination is in the best interest of the child. The best interest of the child is determined after consideration of the needs and welfare of the child such as love, comfort, security, and stability. *In re Bowman*, 642 A.2d 217 (Pa. Super. 1994). See also *In re Adoption of T.T.B.*, 835 A.2d 387, 397 (Pa. Super. 2003).

Child has been in DHS custody since November 28, 2016, thirteen months at time of the termination trial on December 15, 2017 and twenty-six months at the time of the trial on January 23, 2019. Father's SCP objectives were drug and alcohol, parenting, housing, domestic violence, and visitation with Child. Additionally, Father was to sign appropriate consents, comply with the stay-away order regarding MGF, and maintain contact with CUA. (N.T. 12/15/17, pg. 14). Father was aware of his objectives. (N.T. 12/15/17, pg. 13). Father failed to complete treatment for drug and alcohol. For the life of the case, Father has failed to engage in treatment at any point. Father's drug of choice was marijuana. (N.T. 12/15/17, pgs. 22, 31). Father last visited the CEU on June 21, 2017, to schedule his assessment for July 11, 2017. On that day, Father was a no-show for his scheduled assessment and did not call to cancel or reschedule the assessment. Father has not had any contact with the CEU since June 21, 2017. Father admitted that he never attended an assessment at the CEU. Additionally, Father has not completed a drug screen with the CEU since January 18, 2017. (N.T. 12/15/17, pg. 41).DHS Exhibit 3). CUA indicated that Father did not completed his parenting objective at the ARC, but he completed parenting through Project Dad. (N.T. 12/15/17, pg. 31). When Father engaged in parenting at the ARC, Father failed to attend consistently. The ARC discharged Father for non-participation. (N.T. 12/15/17, pgs. 23-24; DHS Exhibit 7). Father has failed to complete his housing objective. Father has previously engaged in housing at the ARC, but Father failed to attend consistently. The ARC discharged Father for non-participation. (N.T. 12/15/17, pg. 24). Father does not have housing. (N.T. 12/15/17, pg. 31). Father has not completed his domestic violence objective and Father has never engaged in domestic violence counseling. (N.T. 12/15/17, pgs. 24, 31). Father has failed to consistently attend weekly supervised visitation with Child. (N.T. 12/15/17, pg. 15-16). Between September 2017 and December 2017, Father has missed four out of twelve weekly visits with Child. (N.T. 12/15/17, pg. 17). Father claimed that he missed these visits due to illness or job training. (N.T. 12/15/17, pg. 36). Although Father's behavior with Child has been appropriate during the supervised visits, Father was involved in an incident with MGF during the visit. On or around August 2017, Father and MGF engaged in an altercation in front of Child, resulting in police assistance. (N.T. 12/15/17, pg. 20). Father's visitation was subsequently suspended. On August 11, 2017, the trial court reinstated Father's supervised visitation. Father has never progressed beyond supervised visitation with Child. (N.T. 12/15/17, pgs. 21, 32-33; DHS Exhibit 2). Throughout the life of the case, Father has refused to sign consents and releases for Child. (N.T. 12/15/17, pg. 24). Father has refused to

sign consents and releases on at least three different occasions and did not provide a reason as to why he refused to provide his signature. (N.T. 12/15/17, pg. 25). Father claimed that he refused to sign the consents and releases because he did not understand what he was signing. (N.T. 12/15/17, pgs. 34-35). Father has also failed to consistently comply with the stay-away order in regards to MGF. Father's incident at the supervised visit with Child was in violation of the trial court's stay-away order. (N.T. 12/15/17, pg. 25). Father has failed to consistently maintain contact with CUA throughout the life of the case. On multiple occasions, CUA has struggled to make outreach to Father and Father would fail to follow up with CUA attempted to contact Father. (N.T. 12/15/17, pgs. 25-26). Father claimed that he did not receive calls or messages from CUA. (N.T. 12/15/17, pg. 40). Father has been non-compliant with his SCP objectives. (N.T. 12/15/17, pg. 27). Child is currently placed with MGF, which is a pre-adoptive home. (N.T. 12/15/17, pgs. 28, 32). Child lives in the home with MGF, MGF's fiancée, and two MGF's two daughters that are two years older than Child. (N.T. 01/23/19, pg. 6). Child is doing well in the home. Child has a strong bond with MGF. Child looks to MGF to meet her day-to-day needs. Child looks to MGF as her caregiver. Child has stability in MGF's home. (N.T. 12/15/17, pgs. 28-29, 32; N.T. 01/23/19, pg. 6). As a result, the trial court found that termination of Father's parental rights was in the best interest of Child for her physical, intellectual, moral, and spiritual well-being. Father has been unable to place himself in a position to parent for the life of the case. The conditions which led to the removal of Child continue to exist after twenty-six months and termination of Father's parental rights would best serve the needs and welfare of Child. (N.T. 12/15/17, pg. 27). The testimony of DHS witness was credible. Because the record contains clear and convincing evidence, the trial court did not abuse its discretion and termination under 23 Pa.C.S.A. §2511(a)(8) was also proper.

After a finding of any grounds for termination under Section (a), the court must, under 23 Pa.C.S.A. §2511(b), also consider what - if any - bond exists between parent and child. _In re Involuntary Termination of C.W.S.M. and K.A.L.M._, 839 A.2d 410, 415 (Pa. Super. 2003). The trial court must examine the status of the bond to determine whether its termination "would destroy an existing, necessary and beneficial relationship". _In re Adoption of T.B.B._ 835 A.2d 387, 397 (Pa. Super. 2003). In assessing the parental bond, the trial court is permitted to rely upon the observations and evaluations of social workers. _In re K.Z.S._, 946 A.2d 753, 762-763 (Pa. Super. 2008). In cases where there is no evidence of any bond between the parent and child, it is

reasonable to infer that no bond exists. The extent of any bond analysis depends on the circumstances of the particular case. *Id*. However under 23 Pa.C.S.A. §2511(b), the rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care, if found to be beyond the control of the parent.

Throughout the life of the case, Father has failed to consistently attend weekly supervised visitation with Child. (N.T. 12/15/17, pg. 15-16). Between September 2017 and December 2017, Father has missed four out of twelve weekly visits with Child. (N.T. 12/15/17, pg. 17). Father claimed that he missed these visits due to illness or job training. (N.T. 12/15/17, pg. 36). Although Father's behavior with Child has been appropriate during the supervised visits, Father was involved in an incident with MGF during the visit. On or around August 2017, Father and MGF engaged in an altercation in front of Child, resulting in police assistance. (N.T. 12/15/17, pg. 20). Father's visitation was subsequently suspended. On August 11, 2017, the trial court reinstated Father's supervised visitation. Father has never progressed beyond supervised visitation with Child. (N.T. 12/15/17, pgs. 21, 32-33; DHS Exhibit 2). Outside supervised visitation, Father does not have telephone contact with Child. Father has not brought Child any gifts at the supervised visitation. (N.T. 12/15/17, pg. 30).Throughout the life of the case, Father has refused to sign consents and releases for Child. (N.T. 12/15/17, pg. 24). Father has refused to sign consents and releases on at least three different occasions and did not provide a reason as to why he refused to provide his signature. (N.T. 12/15/17, pg. 25). Father claimed that he refused to sign the consents and releases because he did not understand what he was signing. (N.T. 12/15/17, pgs. 34-35). Child is currently placed with MGF, which is a pre-adoptive home. (N.T. 12/15/17, pgs. 28, 32). Child lives in the home with MGF, MGF's fiancée, and two MGF's two daughters that are two years older than Child. (N.T. 01/23/19, pg. 6). Child is doing well in the home. Child has a strong bond with MGF. Child looks to MGF to meet her day-to-day needs. Child looks to MGF as her caregiver. Child has stability in MGF's home. (N.T. 12/15/17, pgs. 28-29, 32; N.T. 01/23/19, pg. 6). Child was appointed legal counsel ("Legal Counsel") and Legal Counsel met with Child and had the chance to observe Child. Child is five-years-old and can verbally communicate. Legal Counsel spoke with Child on January 22, 2019, and Child stated that she is happy in MGF's home and would like to be adopted. (N.T. 01/23/19, pg. 6). It is in Child's best interest to terminate Father's parental rights

consistently. The ARC discharged Father for non-participation. (N.T. 12/15/17, pgs. 23-24; DHS Exhibit 7). Father has failed to complete his housing objective. Father has previously engaged in housing at the ARC, but Father failed to attend consistently. The ARC discharged Father for non-participation. (N.T. 12/15/17, pg. 24). Father does not have housing. (N.T. 12/15/17, pg. 31). Father has not completed his domestic violence objective and Father has never engaged in domestic violence counseling. (N.T. 12/15/17, pgs. 24, 31). Father has failed to consistently attend weekly supervised visitation with Child. (N.T. 12/15/17, pg. 15-16). Between September 2017 and December 2017, Father has missed four out of twelve weekly visits with Child. (N.T. 12/15/17, pg. 17). Father claimed that he missed these visits due to illness or job training. (N.T. 12/15/17, pg. 36). Although Father's behavior with Child has been appropriate during the supervised visits, Father was involved in an incident with MGF during the visit. On or around August 2017, Father and MGF engaged in an altercation in front of Child, resulting in police assistance. (N.T. 12/15/17, pg. 20). Father's visitation was subsequently suspended. On August 11, 2017, the trial court reinstated Father's supervised visitation. Father has never progressed beyond supervised visitation with Child. (N.T. 12/15/17, pgs. 21, 32-33; DHS Exhibit 2). Throughout the life of the case, Father has refused to sign consents and releases for Child. (N.T. 12/15/17, pg. 24). Father has refused to sign consents and releases on at least three different occasions and did not provide a reason as to why he refused to provide his signature. (N.T. 12/15/17, pg. 25). Father claimed that he refused to sign the consents and releases because he did not understand what he was signing. (N.T. 12/15/17, pgs. 34-35). Father has also failed to consistently comply with the stay-away order in regards to MGF. Father's incident at the supervised visit with Child was in violation of the trial court's stay-away order. (N.T. 12/15/17, pg. 25). Father has failed to consistently maintain contact with CUA throughout the life of the case. On multiple occasions, CUA has struggled to make outreach to Father and Father would fail to follow up with CUA attempted to contact Father. (N.T. 12/15/17, pgs. 25-26). Father claimed that he did not receive calls or messages from CUA. (N.T. 12/15/17, pg. 40). Father has been non-compliant with his SCP objectives. (N.T. 12/15/17, pg. 27). Child is currently placed with MGF, which is a pre-adoptive home. (N.T. 12/15/17, pgs. 28, 32). Child lives in the home with MGF, MGF's fiancée, and two MGF's two daughters that are two years older than Child. (N.T. 01/23/19, pg. 6). Child is doing well in the home. Child has a strong bond with MGF. Child looks to MGF to meet her day-to-day needs. Child looks to MGF as her caregiver. Child has stability in MGF's home. (N.T. 12/15/17, pgs. 28-29, 32; N.T. 01/23/19, pg.

Page 17 of 19

6). The DHS witness was credible. The record established by clear and convincing evidence that the court's change of Child's permanency goal from reunification to adoption was proper. Child needs permanency, which Father cannot provide. The trial court did not err or abuse its discretion when it changed the permanency goal from reunification to adoption.

**Conclusion:**

For the aforementioned reasons, the trial court found that DHS met its statutory burden by clear and convincing evidence regarding termination of Father's parental rights pursuant to 23 Pa.C.S.A. §2511(a)(1), (2), (5), (8) and (b) and changing Child's permanency goal from reunification to adoption, since it would best serve Child's emotional needs and welfare. The trial court's termination of Father's parental rights and change of Child's permanency goal from reunification to adoption was proper and should be affirmed.

By the court,

Joseph Fernandes J.